Oscar and Graciela **FLORES,**
Plaintiffs,

v.

**ALLSTATE TEXAS LLOYD'S COMPANY, Defendant.**

CIVIL ACTION NO. M–02–410.

United States District Court,
S.D. Texas,
McAllen Division.

July 16, 2003.

Savannah L Robinson, Attorney at Law, Danbury, TX, Heriberto Medrano, Attorney at Law, Harlingen, TX, for plaintiffs.

Rene O Oliveira, Roerig Oliveira & Fisher, Brownsville, TX, William Timothy Bowersox, Hope & Causey, John Michael Causey, Attorney at Law, Conroe, TX, Mark Mitchell Talbot, Allstate Insurance Company, McAllen, TX, for defendant.

## *MEMORANDUM OPINION*

CRANE, District Judge.

■ Defendant Allstate moves for summary judgment on the grounds that Plaintiffs' failure to comply with the requirements of prompt notice and reasonable repairs under their homeowner's insurance policy precludes coverage for mold growth resulting from water damage to the Plaintiffs' home. This case presents a question arising in numerous other mold cases pending before this Court: whether failure to provide prompt notice of an initial water event within the home should preclude, as a matter of law, homeowner's insurance coverage for mold growth resulting from such water event? In analyzing this question the Court finds that, while the answer will typically be based on the facts of each case, a homeowner's failure to provide initial notice of a water event within the home should not, as a general rule, prevent the homeowner from subsequently providing prompt notice of, and receiving coverage for, ensuing mold damage that becomes manifest well after the initial water event, where such initial failure to provide notice is reasonable under the circumstances.

## I.  BACKGROUND

Mr. and Mrs. Oscar Flores filed suit in state court on September 9, 2002, alleging breach of contract, bad faith and insurance code violations against Allstate for failing to properly investigate and fully pay the Floreses' claim for water and mold damage to their home in Mission, Texas.[1]  Allstate timely removed the case to this Court based on diversity jurisdiction. Plaintiffs purchased a Texas Standard Homeowner's Form B Policy ("Policy") from Allstate in 1988 and have renewed it annually through the time of Plaintiffs' claimed losses. (Doc. 12 at 2). Plaintiffs state that they "became concerned about wetness and mold in their home" and contacted an attorney to advise them. (Doc. 1, Exh. A State Petition at 3). The attorney then arranged for contractors to investigate Plaintiffs' home on November 1, 2001. This investigation revealed several leaks and mold growth in the following areas of the home: air conditioning unit, hall and master bathrooms, and kitchen sink. On November 5, 2001, Plaintiffs filed an insurance claim for losses resulting from these leaks,[2] which they contend constitutes

---

1. Although the record is unclear, there is some indication that the Defendant has paid portions of these claims, but the Parties dispute the amount needed to fully compensate Plaintiffs for the repairs required and the alternative living expenses requested during such repair. (See Doc. 1, State Petition at 10, 13, 15 and Doc. 11 Motion for Summary Judgment at Ex.5 to Graciela Flores's deposition).

2. Although Plaintiffs' state petition is very vague concerning whether they make any claims for personal property, as opposed to damage only to the dwelling, Plaintiffs' subsequent proof of loss statement filed with Defendant claims over $38,000 in personal property loss. (Doc. 11, Exh. 4 to Graciela deposition).

"prompt notice" under the Policy from the date they discovered the mold damage. (State Petition at 3). At the summary judgment hearing of May 9, 2003, counsel for Plaintiffs further clarified that Plaintiffs do not seek damages associated with the initial water leaks (e.g. repair of a water stain); rather, Plaintiffs seek coverage only for ensuing mold damage.

Defendant Allstate moves for summary judgment on the grounds that Plaintiffs' claims are barred for failure to comply with certain conditions precedent to coverage under the Policy, specifically prompt notice and mitigation of damages. (Doc. 11). Defendant's position is that Plaintiffs had a duty under the Policy to provide prompt notice of each initial water event that they contend caused ensuing mold damage. All of the leaks identified by the Plaintiffs occurred months to years prior to their claim for mold damage. (Doc. 11 and deposition exhibits). Had Plaintiffs provided such notice, and made necessary repairs, Defendant argues that it would not be faced with the ensuing mold claim and present coverage dispute. (Doc. 11 at ¶¶ 17–18). Defendant further asserts that, because Plaintiffs' water damage claims are barred for their failure to comply with the conditions precedent under the Policy, Plaintiffs' bad faith claims must also fail as a matter of law. (Doc. 11 at ¶¶ 19–20).

## II.  STANDARD OF REVIEW

A court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must first determine whether there are genuine and

material issues of fact by reviewing applicable law. *Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 743 (5th Cir.1994). The Court then examines the evidence on those issues, viewing any contested facts in the light most favorable to the non-moving party. *Id.*

The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of genuine issues of material fact. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Here, Defendant's motion for summary judgment contends that Plaintiffs failed to comply with the conditions precedent in their insurance policy. Because such contention states an affirmative defense, for which the Defendant has the burden of proof at trial, the Defendant must further establish each element of the defense as a matter of law. *Id.* at 322–23, 106 S.Ct. 2548. If the Defendant carries its burden then the Plaintiff must produce significant probative evidence demonstrating that a triable issue of fact exists on at least one element of the defense. *Kansa Reinsurance Co. v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1371 (5th Cir.1994).

## III.  ANALYSIS

### A.  Interpretation of the Policy

██ Under Texas law, construction of insurance contracts is governed by the general rules of contract interpretation. *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999). Therefore, the Court must "give effect to the written expression of the parties' intent, viewing the contract in its entirety" and strive to give each sentence, clause, and word meaning in order not to render any portion of the contract inoperative. *Id.* The burden is on the insurance company to prove the applicability of any exclusions under its policy. *Id.*

The Parties here do not argue that the Policy is ambiguous with respect to the coverage issues in dispute. The Court will assume, therefore, that the Parties believe the sections of the Policy relevant to the present dispute are clear and unambiguous. In addition, the Parties do not generally dispute that the Policy covers ensuing mold damage.

Plaintiffs' Policy covers all physical loss to both the dwelling ("Coverage A") and certain personal property contained within the dwelling ("Coverage B"), unless otherwise excluded. (Doc. 12, Exh. 2 Policy at 4, Section I Perils Insured Against). Coverage to the dwelling (A) is limited by certain exclusions contained in "Section I Exclusions," which states in pertinent part:

"1 ... f. We do not cover loss caused by:

(2) rust, rot, mold, or other fungi....

We do cover ensuing loss caused by collapse of building or any part of the building, water damage or breaking of glass which is part of the building if the loss would otherwise be covered under this policy."

■ The Policy here excludes "loss caused by ... mold," under Coverage A (Dwelling), unless such loss ensues from "water damage ... if the loss would otherwise be covered under this policy." (Doc.12, Ex. 2 Policy at 4–5). Thus, mold damage to the dwelling is covered as a distinct loss if it ensues from an otherwise covered loss under the Policy.[3] Plumbing and air conditioning leaks and overflows are presumably included under the "all risk of physical loss" language of Coverage A, because they are not otherwise specifically excluded in Section I Exclusions.

Coverage (B) insures against physical loss to personal property "caused by a peril listed below, unless the loss is excluded in Section I Exclusions." The perils "listed below" include:

9. Accidental Discharge, Leakage or Overflow of Water or Steam from within a plumbing, heating or air conditioning system or household appliance.

A loss resulting from this peril includes the cost of tearing out and replacing any part of the building necessary to repair

---

**3.** This Court declines to follow the reasoning of *Fiess v. State Farm Lloyds*, Civil Action No. H–02–1912, 2003 WL 21659408 (Southern District of Texas, June 3, 2003), in which the court concluded that the Texas HO–B policies exclude mold damage completely, regardless of the cause, and that mold coverage is also not included under the "ensuing loss" provision when it is caused by water damage. *Id.* at 14. The *Feiss* court instead reasoned just the opposite: that "ensuing" water damage must *result from* an exclusion, such as mold, listed under provision 1.(f). *Id.* In so reasoning, the court relied on the Fifth Circuit's opinion in *Aetna Casualty and Surety Co. v. Yates*, 344 F.2d 939, 941 (5th Cir.1965). This Court, however, reads *Yates* to support its construction of the mold exclusion as described above. In *Yates*, the plaintiffs sought coverage for wood rot that was caused by naturally occurring condensation accumulating in an inadequately vented crawl space under the house. *Yates*, 344 F.2d at 940.

The Fifth Circuit rejected plaintiffs' argument that the policy's "ensuing loss" provision covered rot caused by such condensation. *Id.* at 941. Rather, the Fifth Circuit noted that "A likely case for the application of the [ensuing loss] clause would be if water ... coming from a burst pipe flooded the house and in turn caused rust or rot; loss from rust or rot so caused would be a loss ensuing on water damage. That is not this case, where the rot may have ensued from the presence of water but not from water damage." *Id.* Like the *Yates* court, this Court construes the mold exclusion as precluding coverage for mold occurring naturally or resulting from a non-covered event, but not for mold "ensuing" from a covered water damage event. This Court's interpretation of the policy is also in accord with the Texas Supreme Court's recent stance regarding the interpretation of Texas HO–B insurance policies. *See Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 742 (Tex.1998).

or replace the system or appliance. But this does not include loss to the system or appliance from which the water or steam escaped.

Exclusions 1.a. through 1.h. under Section I Exclusions do not apply to loss caused by this peril.

Therefore, this peril number 9 is not subject to the mold exclusion in Section I Exclusion 1.f.[4] (Doc. 12, Exh. 2 Policy at 4, Section I Peril Insured Against, No. 9). Because mold is not excluded from personal property coverage, it may well be considered *included* as "a loss resulting from this [No. 9] peril." (Doc.12, Ex. 2 Policy at 4, Section I Perils Insured Against).

Consequently, the Court finds that Plaintiffs' HO–B Policy covers mold damage to the dwelling or to personal property that ensues from an otherwise covered water damage event under the Policy.

### B.   Notice Requirement

#### 1.   Promptness

Plaintiffs' Policy further assigns to the insured certain duties regarding notice and repairs. (Doc. 12, Exh. 2 Policy at 6, Section I Conditions, No. 3 "Duties After Loss"). The "Duties After Loss" section declares, in relevant part:

"a.   Your Duties After Loss. In case of a loss to covered property insured against, you must:

(1) give prompt written notice to us of the facts relating to the claim . . .

(3) (a) protect the property from further damage.

(b) make reasonable and necessary repairs to protect the property. . . ."

Texas courts interpret insurance policy notice requirements as conditions precedent to coverage. *See, e.g., Love of God Holiness Temple Church v. Union Standard Ins. Co.,* 860 S.W.2d 179, 180 (Tex.App.-Texarkana 1993, writ denied); *Dairyland County Mutual Ins. Co. v. Roman,* 498 S.W.2d 154, 157 (Tex.1973). An insured's failure to comply with the notice requirement "constitutes a breach of contract and relieves the insurer of the obligation to defend or indemnify." *Nan Travis Memorial Hospital v. St. Paul Fire & Marine Ins. Co.,* 394 F.2d 112 (5th Cir. 1968). Whether notice is "prompt" is generally a question of fact, evaluated under a standard of reasonableness. *Continental Savings Assoc. v. U.S. Fidelity & Guaranty Co.,* 762 F.2d 1239, 1243 (5th Cir.1985). If the facts are undisputed, however, Texas courts may deem late notice unreasonable as a matter of law in particular cases. *See, e.g., Highlands Ins. Co. v. Employers' Surplus Lines Ins. Co.,* 497 F.Supp. 169, 171 n. 1 (E.D.La.1980); *McPherson v. St. Paul Fire & Marine Ins. Co.,* 350 F.2d 563, 565 (5th Cir.1965); *Klein v. Century Lloyds,* 154 Tex. 160, 163, 275 S.W.2d 95 (Tex.1955). This is especially true "where the delay is totally unexplained and without excuse." *National Union Fire Ins. v. Bourn,* 441 S.W.2d 592, 595 (Tex.Civ.App.-Ft. Worth 1969, writ ref'd, n.r.e.).

#### 2.   Manifestation of Damage

The Policy here requires prompt notice of "facts relating to the claim." An insured cannot provide notice until he is aware of facts relating to a *claim.* Under Texas law, a party cannot be said to sustain actual property damage until such damage becomes manifest.

---

4. This case is distinguishable from *Balandran v. Safeco Ins. Co. of America,* 972 S.W.2d 738 (Tex.1998). *Balandran* concerned a separate exclusionary provision (1.h.) of the same section of the HO–B policy, which the plaintiffs in that case argued was ambiguous. The Parties here do not contend such an ambiguity exists with respect to exclusion 1.f and, thus, the Court need not address the issues presented in *Balandran.*

*American Home Assurance Co. v. Unitramp Ltd.*, 146 F.3d 311, 313 (5th Cir. 1998). Insurance coverage is not even triggered until identifiable damage occurs during the policy period. *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 257 (Tex.App.-Dallas 1993, writ denied); *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 383 (Tex.App.-Dallas 1987, no writ). By extension, there can be no duty to notify until damage is apparent. Plaintiffs here make a claim for mold damage, not the initial water events. They contend that their mold claim did not arise until the mold damage became apparent or was discovered by professional mold remediators.

■ Applying principles of Texas law articulated in the *Cullen/Frost Bank* case, the Fifth Circuit was careful to explain that " 'apparent' does not mean 'discovered'; just because something is unknown to an individual does not render it, in an objective sense, unapparent." *Unitramp Ltd.*, 146 F.3d at 314. Thus, an insured cannot fail to discover an obvious defect "through sheer indolence ..." and later declare such defect "apparent" on the date it was discovered. *Id.* On the other hand, an insured is also not held to "a heavy burden of inspecting [his] property for hidden defects." *Id.* Rather, the *Unitramp* court found that Texas law simply dictated that "The date of occurrence is when the damage is capable of being easily perceived, recognized, and understood." *Id.*

Similarly, by way of demonstration in the mold context, a homeowner cannot sit back and watch mold grow in his home, or observe an obvious mold-instigating event—such as the flooding of a room in which the baseboards and walls are saturated for several days, or a continuous leak that saturates a surface—and not notify his insurers. But not every water event will cause mold to ensue. Consequently, an insured is not expected to notify his insurance company each time the toilet overflows or the sink drips, where the insured takes prompt remedial action appropriate to the circumstances.

### 3. Prejudice

Plaintiffs further argue that the Defendant has not shown how it was prejudiced by any delay in notice of the mold claims. (Doc. 12 at 12). However, the Texas Insurance Board Orders requiring a showing of prejudice, to which Plaintiffs refer, are restricted to automobile and general liability insurance policies. *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex. App.-Houston [1st Dist.] 1993, writ denied); *Gemmy Ind. Corp. v. Alliance General Ins. Co.*, 190 F.Supp.2d 915, 921–22 (N.D.Tex.1998). Therefore, although the Fifth Circuit may have noted a "trend" toward Texas courts requiring a showing of prejudice to prevail in untimely notice cases,[5] no Texas cases have yet held that such demonstration of prejudice is required in homeowner's policies. This Court is thus constrained by the current status of Texas law and declines to require that Defendant demonstrate prejudice for any alleged failure of Plaintiffs to comply with the Policy's notice requirement.

■ In sum, the language of the Policy and current Texas law demonstrate that an insured may satisfy the notice requirement in a Texas HO–B insurance policy by giving prompt notice of a claim for mold damage when such damage becomes manifest or apparent. In most cases, whether such notice is deemed reasonably prompt under the Policy will be a question of fact for the jury. However,

5. *Hanson Production Co. v. Americas Ins. Co.*, 108 F.3d 627, 631(5th Cir.1997). The Court notes that *Hanson* did not concern a homeowner's policy.

notice of a mold claim may be considered unreasonable as a matter of law if the facts are undisputed and the notice is delayed and not excused. Furthermore, an insurer need not show that it was prejudiced by the late notice under a Texas HO–B insurance policy.

## C. Application to Plaintiffs' Claimed Losses

Defendant's summary judgment motion argues that some of the leaks in Plaintiffs' home produced no ensuing damage and that Plaintiffs knew of other ongoing leaks and failed to provide "prompt notice" and make necessary repairs to protect the property from additional damage as required by the Policy. Defendant must establish that no genuine issue of material fact exists concerning its affirmative defenses with respect to each leak. Although Plaintiffs' petition cites only claims concerning the bathrooms, kitchen, and air conditioning system, the discovery process has evidently uncovered other and more specific sources of those claims that Defendant addresses in its summary judgment motion. The Court will, therefore, address each leak cited in the Defendant's motion.

### 1. Master bathroom sink

Defendant contends that Plaintiffs were aware of a leak under the master bathroom sink three to four years before reporting it to Defendant, but also notes that Mr. Flores "fixed the problem." (Doc. 11 at ¶ 8). The deposition testimony that Defendant cites, however, states only that Mrs. Flores was aware of a drip under the sink that occurred "maybe like three or four years ago" and that Mr. Flores fixed the problem. (Doc. 11, Exh. B at 43–44). Defendant does not specify here whether it complains only of unreasonable notice or also of absence of ensuing damage. However, Attachment 5 to Mrs. Flores's deposition is Allstate's estimate of the losses from each of Plaintiffs' claimed leaks, which assigns a value to the "Master Bath–Sink Leak" at $1,402.20. The estimate includes amounts for replacing the vanity and treating it with "mildewcide," which indicates that mold damage did in fact ensue from this leak. The deposition testimony cited does not show that Plaintiffs failed to fix the leak right away nor that Plaintiffs were aware of ongoing saturation or mold growth. If the mold growth was hidden and not otherwise "apparent" to Plaintiffs until uncovered by mold investigators, then it was not per se unreasonable for Plaintiffs to provide notice to Allstate within a week of learning of the mold problem. Defendant has not met its burden to show that no fact issue exists concerning the reasonableness of Plaintiffs' response to this claimed leak.

### 2. Hall Bathroom Toilet

Defendant alleges that the Plaintiffs' toilet overflowed on several occasions, the last of which was seven to eight months prior to Plaintiffs' notice to Allstate. (Doc. 11 at ¶ 9). Deposition testimony from Mrs. Flores reveals that the overflows were immediately mopped up and the toilet fixed by Mr. Flores. Plaintiffs also hired repairmen to "clean the tanks." (Doc. 11, Exh. B at 46–50). There is nothing in the deposition evidence cited to indicate that Plaintiffs knew or should have known that a significant mold problem would ensue or that Plaintiffs failed to make immediate and necessary repairs. Allstate's repair estimate calls for, among other things, replacement of wall paneling, wallpaper, and crown and trim moulding, as well as treatment with mildewcides. (Doc. 11, attachment 5 to Exh. B). It is quite possible that the mold growth occurred behind wallpaper and paneling where it was undetected until uncovered by mold investigators. The Court must

construe such uncertainties in Plaintiffs' favor and find that Defendant failed to establish that no fact issue exists as to this claim.

### 3. Skylight, Hall Bathroom

Defendant alleges that Mrs. Flores noticed a water stain around the skylight over a year before notifying Allstate. (Doc. 11 at ¶ 10). Mrs. Flores states in her deposition that she did not have a repair person out to inspect it but that she also did not observe the stain to worsen or expand. (Doc. 11, Exh. B at 53–54). Again, there is no indication from the deposition testimony that Plaintiffs were aware of an ongoing leak or ensuing mold growth associated with this water stain. It is possible that the stain arose from a single severe thunderstorm event in which some hard-driven rain made its way through the seam of the skylight. A reasonable homeowner might not expect to experience lasting damage or mold growth from such event. Therefore, the Court finds that the Defendant also fails to establish the absence of a genuine fact issue on this claim.

### 4. Hall Bathroom Sink

■ Defendant contends that Plaintiffs were aware of past leaks in the hall bathroom sink and aware of brown, circular stains on the walls seven to eight months before providing notice to Allstate. (Doc. 11 at ¶ 11). Mrs. Flores recalled in her deposition that the hall sink experienced a small, one-time leak that Mr. Flores fixed. (Doc. 11, Exh. B at 55–56). There is no evidence that the leak manifested ensuing, apparent damage prior to the time the Plaintiffs notified Allstate. Thus, a fact issue exists as to whether Plaintiffs provided prompt notice of the sink leak.

The circular stains on the hall bath walls are more troublesome and it may very well have been unreasonable for Plaintiffs to wait eight months to notify Allstate about such stains. However, the deposition testimony cited by Defendants does not establish that the stains discussed are in fact mold, and not dry water stains, or that the Floreses knew or should have known that the stains represented mold growth or other such ensuing damage for which notice of a claim was necessary. While Mrs. Flores equivocates regarding the size, color, and characteristics of the brown stains on the hall bath walls, she appears to conclude that the discoloration may have just been "my eyes" and that the stains did not appear to be getting worse. (Doc. 11, Exh. B at 58–60):

> Q: But as far as it getting like progressively worse, it is not doing that, just some days is looks darker than others. Would that be fair?
>
> A: Yeah. Something like that.

(Doc. 11, Exh. B at 60 ln.14–17).

Mrs. Flores's description of the brown discoloration on the hall bath walls also differs markedly from her description of the black stains in the master bathroom, which she clearly identified as mold. (Compare Doc. 11, Exh. B at 76 ln.17–18, 77 ln.19, 78 ln. 4–6 with Doc. 11, Exh. B at 58–60 and 80 ln. 6–10). From the evidence submitted on summary judgment, a trier of fact could conclude that the hall bath stains are not mold at all, but mere water stains. This claim, then, also presents a fact question more appropriately submitted for a jury's determination.

### 5. Kitchen Sink Drain

Here, the Defendant concedes that the Plaintiffs "cleaned up the leak and noted only minimal damage" from a kitchen sink leak that "might have occurred more than two years ago." (Doc. 11 at ¶ 12). The "minimal damage" is not defined. The evidence does not reveal that Plaintiffs

were or should have been aware of any ensuing mold growth or other manifestation of damage for which they needed to notify Allstate. Therefore, it is difficult for the Court to see what is per se unreasonable about Plaintiffs' efforts in responding to this leak, where the "minimal damage" may have only been a small water stain. Defendant has failed to meet its summary judgment burden regarding this claim.

### 6. Water Heater

Again, Defendant notes that the Floreses' water heater burst one to two years ago and that the water spill was cleaned up and "While the walls got wet, there has not been any discoloration." (Doc. 11 at ¶ 13). Plaintiffs further state that they replaced the broken water heater. (Doc. 11, Exh. B at 61–62). Although it does not appear from the petition, or Allstate's estimate, that Plaintiffs are making a claim for any damages from the water heater event, to the extent ensuing mold damage is claimed Plaintiffs should be able to pursue such claim past summary judgment. It is not per se unreasonable for a homeowner to experience a one-time water event, to clean and dry the spill quickly, and expect the walls to dry on their own without producing ensuing mold or other damage absent particular evidence that the homeowners were aware or should have been aware of mold damage. Defendant fails to establish the absence of a genuine fact issue as to this claim.

### 7. Air Conditioning System

Plaintiffs also admit that their air conditioning unit experienced a couple of overflow leaks a few years before they notified Allstate of mold damage. However, Mr. Flores also claims to have responded to each overflow promptly by drying the affected areas with a fan and cleaning out the drains. The Floreses also eventually replaced the carpet. Mr. Flores further contends that he performs regular maintenance on the air conditioning system and replaces the filters monthly. (Doc. 11, Exh. C at 41–48). Without any evidence that Plaintiffs were aware or should have been aware of mold damage, the Defendant has once again failed to meet its summary judgment burden and establish the absence of a genuine issue of fact as to this claim.

### 8. Mold Growth, Master Bedroom Ceiling

■ The Defendant alleges that the Floreses became aware of mold growth in their "home" several months before providing notice to Allstate. (Doc. 11 at ¶ 15). Although the deposition evidence does not reveal that Plaintiffs were previously aware of mold growth in their home generally, it does show that Plaintiffs were aware of mold growing on their master bathroom ceiling approximately six months prior to giving notice to Allstate. (Doc. 11, Exh. B. at 75–76; Exh. C at 51–53). While there is some general discussion in the deposition about Mrs. Flores's attempts to clean mold off the baseboards and tile floor in the master bath, it appears that this portion of the discussion concerned her very recent, "post-notice" attempts to clean mold in the bathroom. (Doc. 11, Exh. B at 77–79). The Floreses' testimony indicates that the only apparent "pre-notice" mold growth was on the upper wall and ceiling in the master bathroom. (Doc. 11, Exh. B. at 75–76; Exh. C at 51–53). Mr. Flores testified that he went up to look in the attic and the roof for a leak that might have been the source of the mold growth, but found nothing. (Doc. 11, Exh. C at 53–54). The Floreses otherwise did not hire a repair person, eliminate the mold problem themselves, nor notify Defendant of the problem within the six

months following the manifestation of the mold.

As discussed in the legal analysis above, the manifestation of damage triggers the duty to notify. Plaintiffs' failure to notify Allstate for six months after a claim for mold damage became apparent, and their failure to mitigate the spread of such mold, was not "prompt" or reasonable as a matter of law. Defendant has met its summary judgment burden with respect to this claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny summary judgment on claims one through seven above. The Court will grant summary judgment for the Defendant on Plaintiffs' claim for mold damage to the ceiling of the master bathroom. All of Plaintiffs' claims for damages, bad faith and statutory violations will be dismissed with respect to the master bathroom ceiling only.

### *ORDER*

For the reasons stated on the record at the May 9th, 2003 hearing, and in the accompanying Memorandum of July _____, 2003, it is ORDERED, AD-JUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED with respect to the Plaintiffs' claims for mold damage to the ceiling of the master bathroom. All the Plaintiffs' causes of action with respect to this claim are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment on all other claims by the Plaintiffs is hereby DENIED.