Olga **SALINAS** and Martin **Villarreal, Plaintiffs,**

v.

**ALLSTATE TEXAS LLOYD'S COMPANY, Defendant.**

**CIVIL ACTION NO. M–02–272.**

United States District Court, S.D. Texas, McAllen Division.

July 23, 2003.

Savannah L Robinson, Danbury, TX, for plaintiffs.

Carolyn S Schultz, Doyle Restrepo et al, Houston, TX, Rene O Oliveira, Roerig Oliveira & Fisher, Brownsville, TX, Ronald Joseph Restrepo, Doyle Restrepo et al, Martin R Sadler, Martin Disiere et al, Houston, TX, Liza Michelle Vasquez, Roerig Oliveira and Fisher, McAllen, TX, for defendant.

### MEMORANDUM

CRANE, District Judge.

Of the numerous motions presently pending before the Court in this case, the Court herein addresses only the motions regarding the Parties' dispute over interpretation of the mold exclusion in the Plaintiffs' homeowner's (Texas HO–B) insurance policy ("Policy").

## I. BACKGROUND

Plaintiffs filed suit in state court on June 10, 2002, alleging breach of contract, bad faith and insurance code violations against Allstate for failing to properly investigate and fully pay the Plaintiffs' claim for water and mold damage to their home in Weslaco, Texas. Plaintiffs purchased a Texas Standard Homeowner's Form B Policy ("Policy") from Allstate that was in effect "for the relevant term." (Doc. 1, State Petition). Although the Parties do not mention the effective dates of the Policy, the Court will assume the Policy was in effect during the time period relevant to

the subject claims, since the Parties do not argue otherwise. The Court notes that the Policy attached as Exhibit 1 to Defendant's motion for summary judgment is dated "Effective July 8, 1992 (Revised January 1, 1996)." (Doc. 20, Exh. 1).

Allstate timely removed the case to this Court based on diversity jurisdiction. Defendant now moves for summary judgment on the grounds that Plaintiffs' failure to comply with the requirements of prompt notice and reasonable repairs under their Policy precludes coverage for mold growth resulting from water damage to the Plaintiffs' home. (Doc. 20). Plaintiffs move for partial summary judgment, contending an ambiguity exists regarding the mold exclusion in the Policy. (Doc. 22). Defendant additionally moves to exclude Plaintiffs' summary judgment evidence. (Doc. 32).

In large part, this case presents the same issues already addressed in the Court's recent opinion in *Flores v. Allstate Texas Lloyds Co.*, Civil Action No. M–02–410 (S.D.Tex. July 16, 2003). To that extent, the Court adopts and follows its reasoning in *Flores* in analyzing and determining the instant case.

The instant case also presents two additional issues propounded by Plaintiffs in their motion for partial summary judgment that the Court will also address:

(1) Whether the Policy's exception to the mold exclusion available under the personal property coverage ("Coverage B") can be imputed to the dwelling coverage ("Coverage A") pursuant to the Texas Supreme Court's reasoning in *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738 (Tex.1998); and

(2) Whether mold resulting from excluded "deterioration" is covered if caused by intervening water damage?

## DISCUSSION

### A. Interpretation of the Mold Exclusion

#### 1. Parties' Arguments

After conceding during several recent court appearances in other mold cases that certain mold damage may be covered under a Texas HO–B policy, Defendant now seizes on the recent decision out of Houston, *Feiss v. State Farm Lloyds*, to support its new argument that mold claims are completely barred under such policies. (Doc. 20 at 4–5). Defendant additionally argues, as it has in past mold cases, that Plaintiffs' claims concerning the air conditioning system and master bath shower pan are barred for failure to provide prompt notice of water damage and to make necessary repairs. (Doc. 20 at 5–11). Finally, Defendant contends that claims stemming from damage to Plaintiffs' roof should be barred because Defendant has already fully compensated Plaintiffs for such damage and Plaintiffs have failed to make the necessary repairs to the roof. (Doc. 20 at 12–14).

Plaintiffs' partial summary judgment motion, in turn, argues that the mold exclusion in the Policy is ambiguous and should be construed against Defendant and in favor of coverage. (Doc. 22). First, Plaintiffs maintain that the term "loss" under Section I, Coverage B, No. 9 is ambiguous and that the Policy's repeal provision of exclusions 1(a) through 1(f) for personal property (Coverage B) should be extended to the dwelling (Coverage A), pursuant to the Texas Supreme Court's ruling in *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 740 (Tex.1998). (Doc. 22 at 3). Second, Plaintiffs argue that mold damage is covered under the "ensuing loss" provision of Section I, Exclusion (f), when it ensues from a covered water damage event. (Doc. 22 at 5–6).

Third, Plaintiffs take the second argument one step further and appear to contend that mold ensuing from water damage that is itself caused by another excluded loss under Section I, Exclusion (f), such as "deterioration," is also covered under the Policy. (Doc. 22 at 7–9).

*2. Analysis*

For the reasons articulated in this Court's July 16, 2003 opinion in *Flores v. Allstate Texas Lloyds Co.*,[1] the Court rejects Defendant's argument that the Policy at issue precludes all mold claims. However, the Court also rejects Plaintiffs' contention that the mold exclusion (Section I, Exclusion (f)) is ambiguous and requires the Court to expand the mold coverage under the Policy beyond that already articulated in its *Flores* opinion.

■ With respect to Plaintiffs' first argument, this Court does not read *Balandran* to completely repeal Exclusions 1(a) through 1(h) for both the personal property (Coverage B) and dwelling (Coverage A) sections of the Policy. As the *Balandran* court acknowledges, ambiguities can exist when a "[C]ontract is subject to two or more reasonable interpretations...." *Balandran*, 972 S.W.2d at 741. Under such circumstance, Texas contract law requires that the court adopt the construction urged by the insured, so long as such construction is "not unreasonable." *Id.* The exclusion at issue in *Balandran*, Section I. Exclusion (h), expressly applies *only* to the dwelling (Coverage A). *Id.* and see Policy, Doc. 20, Exh. 1 at 8. Yet, Exclusion (h) is specifically repealed *only* from the *personal property* (Coverage B) section of the policy. *Id.* The *Balandran* court found that this inconsistency was a primary basis for the insured's confusion

in believing that the repeal of Exclusion (h) was meant to extend to coverage for the dwelling (Coverage A). *Id.* The court explained that:

"[S]afeco's construction of the policy renders a part of the policy language meaningless.... Under Safeco's reading, of course, exclusions 1(a) through 1(h) are repealed only for personal property losses caused by a plumbing leak. However, exclusion 1(h) on its face applies only to damage to the dwelling. Thus, if Safeco's reading is correct, it would have been unnecessary to extend the exclusion repeal provision to exclusion 1(h), because that exclusion can never affect personal property losses...."

*Id.*

■ Unlike the exclusion 1(h) at issue in *Balandran*, the mold exclusion 1(f) in the Plaintiffs' Policy contains no such express restriction to dwelling coverage. Mold can affect personal property just as well as real property. The Court is mindful that it must "give effect to the written expression of the parties' intent, viewing the contract in its entirety" and strive to give each sentence, clause, and word meaning in order not to render any portion of the contract inoperative. *Texas Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999). Plaintiffs' reading of the Policy would eliminate the majority of exclusions under the Policy because it would apply the exclusion *repeal* provision under Coverage B, which is clearly intended to broaden coverage for certain personal property damaged by plumbing leaks, to all coverage under the Policy. Plaintiffs' interpretation is, therefore, unreasonable, and the Court declines to find any ambigu-

---

**1.** 278 F.Supp.2d 810, 2003 WL 22006302 (S.D.Tex. July 16, 2003). See, in particular, the discussion at 4–6 and note 3.

ity or extend Coverage B's repeal of the mold exclusion to Coverage A.

■ The Court accepts Plaintiffs' second argument, that the "ensuing loss" provision provides coverage for certain mold losses that ensue from otherwise covered water damage events under the Policy. This argument does not differ from the Court's reading of the same policy language, articulated in its *Flores* opinion. *See supra* part I.

■ Finally, the Court rejects Plaintiffs' argument that the Policy should also cover mold damage resulting from another excluded loss under the Policy, such as deterioration. The Court does not read *Home Ins. Co. v. McClain* as extending this far, contrary to Plaintiffs' argument. (Doc. 22 at 5–7). Rather, *McClain* accords with this Court's opinion in *Flores. McClain,* 2000 WL 144115 (Tex.App.-Dallas, Feb.10, 2000), unreported. Further, during a recent hearing, Plaintiffs' counsel directed the Court to the *Burditt v. West American Ins. Co.* opinion as also supporting Plaintiffs' argument. 86 F.3d 475 (5th Cir. 1996). After reviewing *Burditt,* however, the Court finds it also distinguishable. The policy at issue in *Burditt* involved very different exclusionary language and did not contain the "ensuing loss" nor "if the loss would otherwise be covered" language of the Policy before the Court here. *Compare Burditt,* 86 F.3d at 476 with Doc. 20, Exh. 1 at 7, Exclusion 1.(f).

In sum, the Court adopts the interpretation of the HO–B Policy discussed in its previous *Flores* opinion and holds, once again, that the Policy covers mold claims to the extent that the claimed mold damage ensues from an otherwise covered water damage event. *Flores v. Allstate Texas Lloyds Co.,* 278 F.Supp.2d 810, 2003 WL 22006302 (S.D.Tex. July 16, 2003).

## B. Notice and Repairs

In addition to its policy interpretation argument above, Defendant also moves for summary judgment on three of Plaintiffs' claims on the grounds that Plaintiffs' failure to give prompt notice and/or make necessary repairs should bar coverage as to each of those claims. Defendant presents the same legal arguments here as it did in the *Flores* case and, therefore, the Court again adopts its reasoning in *Flores* in evaluating the factual circumstances of each of the claims below.

### 1. HVAC/Air Conditioning System

■ In contravention of the conditions precedent in the Policy, Defendant complains that Plaintiffs were aware of visible mold stemming from the HVAC leaks several years prior to providing notice in September, 2001, but took no steps to protect or repair the property or to report the loss sooner. (Doc. 20 at 5). The deposition testimony of Mr. Villarreal supports Defendant's contention. Mr. Villarreal admits that the HVAC would leak as a result of the coils freezing over every few years, starting in about 1993 or 1994. (Doc. 20, Exh. 4 at 75–77). During this time period, the areas affected by such leaks looked black and smelled moldy. (Doc. 20, Exh. 4 at 75 82). Although Mr. Villarreal would employ a repairman to fix the HVAC each time it broke down, he did not take sufficient measures to dry the saturated areas or eliminate the mold in the areas affected by the HVAC leaks. (Doc. 20, Exh. 4 at 75–82).

Plaintiffs' summary judgment response provides pages of legal argument, discussing why homeowners should not be held accountable for their knowledge of visible mold, but provides no factual evidence contravening Mr. Villarreal's deposition testimony. The Court finds this situation analogous to the Floreses' knowledge of mold

growth on their master bathroom ceiling six months prior to providing notice to Allstate. *Flores v. Allstate Texas Lloyds Co.*, 278 F.Supp.2d 810, 819–20, 2003 WL 22006302, at p. 15 (S.D.Tex. July 16, 2003). Here, Mr. Villarreal was aware of such mold growth in his HVAC closet *years* before providing notice to Allstate. The Plaintiffs' failure to notify Allstate several years after a mold claim became apparent, and their failure to mitigate the spread of such mold, was not "prompt" or reasonable as a matter of law. Defendant has met its summary judgment burden with respect to this claim.

### 2. Master Bathroom Shower Pan

Like the mold stemming from the HVAC leaks, Plaintiffs had actual knowledge of water damage and mold growth from a leak in the master bath shower pan at least a year before notifying Allstate in September, 2001. (Doc. 20 at 6–7; Exh. 4 at 59–60, 61–68; Exh. 5 at 79–84). Plaintiffs testified that they observed a water stain seeping through to the brick wall outside the house in approximately 1999–2000. Shortly thereafter, they observed mold growth on the shower floor that continued to worsen. Plaintiffs failed to repair the leak or to promptly notify Allstate.

█ Again, Plaintiffs' summary judgment response fails to provide any facts countering such testimony or to provide any excuse which might be taken into account in evaluating the reasonableness of Plaintiffs' actions. Plaintiffs' failure to provide notice and make repairs for over a year prior to notifying Allstate was not prompt or reasonable as a matter of law and Defendant is, therefore, entitled to summary judgment on this claim as well.

### 3. Roof Leaks

█ The facts surrounding Plaintiffs' mold claims stemming from roof damage are less developed in the summary judgment evidence and the Court is thus unable to conclude that Defendant is entitled to summary judgment on such claims. Plaintiffs apparently suffered damage to their roof in 1991, 1999, and 2002. (Doc. 20 at 11–13; Doc. 29 at 4). Defendant contends that Allstate paid for all repairs after the 1999 damage and that the Plaintiffs experienced no additional problems with the roof. (Doc. 20 at 11). Plaintiffs' deposition testimony supports Defendant's contention. (Doc. 20, Exh. 4 at 25–29, Exh. 5 at 50–51). What the evidence does not tell the Court, however, is whether any mold ensued from the 1999 damage, of which the Plaintiffs were justifiably unaware (e.g. because such mold was hidden within walls and not visible), and for which Plaintiffs now make a claim.

In addition, Defendant claims that Plaintiffs failed to make repairs after Allstate paid the 2002 roof damage claim. (Doc. 20 at 12–13). The deposition evidence shows that Plaintiffs did use Allstate's payment to replace the roof, but have not yet repaired the interior of the home because of the pending litigation and continuing investigation by experts and adjusters of the extent of the mold damage. (Doc. 20, Exh. 4 at 29–37; Doc. 29 at 4). The Court cannot conclude that it is unreasonable for Plaintiffs to refrain from repairing the very mold damage that is the subject of pending litigation and ongoing investigation by both Parties.

Because genuine issues of material fact exist regarding the extent of mold damage claimed as a result of roof leaks that might be covered under the Policy, the Court finds that Defendant has not met its summary judgment burden concerning Plaintiffs' roof claims. Therefore, the Court will deny summary judgment as to the

# 826

mold claims that Plaintiffs contend ensued from any covered roof leaks.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant summary judgment on Plaintiffs' mold claims stemming from the HVAC and master bath shower pan leaks. Plaintiffs' claims for damages, bad faith and statutory violations will be dismissed with respect to these claims. The Court will deny summary judgment on Plaintiffs' mold claims resulting from roof damage.

The Court will also deny both the Plaintiffs' and Defendant's summary judgment arguments regarding the interpretation of the insurance policy, to the extent they conflict with this Court's previous opinion in *Flores v. Allstate Texas Lloyds Co.*, 278 F.Supp.2d 810, 2003 WL 22006302 (S.D.Tex. July 16, 2003).

Finally, the Court notes that Defendant has also moved to strike Exhibit 1, Affidavit and Report of Peter de la Mora, P.E. from Plaintiffs' summary judgment evidence. (Doc. 32). Without reaching the merits of Defendant's argument, the Court will deny Defendant's motion because the Court did not review or rely on the challenged summary judgment evidence in reaching its opinion.

See the Court's final Order of July ———, 2003, accompanying this Memorandum Opinion.

### *ORDER*

For the reasons stated in the accompanying Memorandum of July ———, 2003, and in the Court's opinion in *Flores v. Allstate Texas Lloyds Co.*, 278 F.Supp.2d 810, 2003 WL 22006302 (S.D.Tex. July 16, 2003), it is ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment (Docket No. 11) is GRANTED with respect to the Plaintiffs' claims for mold damage from the air conditioning ("HVAC") system and master bathroom shower pan. All the Plaintiffs' causes of action with respect to these two claims are hereby DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment on all other claims by the Plaintiffs is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment Concerning Coverage Under An HOB Form Policy of Insurance is DENIED to the extent that it conflicts with, or extends beyond, the opinion established by this Court in *Flores v. Allstate Texas Lloyds Co.*, 278 F.Supp.2d 810, 2003 WL 22006302 (S.D.Tex. July 16, 2003).

IT IS FURTHER ORDERED that Defendant's Objection to and Motion to Strike Plaintiffs' Summary Judgment Evidence is DENIED.