**AMERICAN HOME ASSURANCE COMPANY, Plaintiff–Counter–Defendant–Appellee,**

v.

**UNITRAMP LIMITED and Unitramp, S.A., Defendants–Counter–Claimants–Appellants.**

No. 97–20794.

United States Court of Appeals, Fifth Circuit.

July 28, 1998.

Innes A. Mackillop, Walter Joseph Gallant, Brown, Sims, Wise & White, Houston, TX, for American Home Assur. Co.

Mark S. Cohen, Chester Joseph Makowski, Royston, Rayzor, Vickery & Williams, Houston, TX, for Defendants--Counter Claimants--Appellants.

Before KING, SMITH and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Unitramp Limited and Unitramp, S.A. ("Unitramp"), appeal a judgment that American Home Assurance Company ("American") owes them no indemnity for damages suffered following a delivery of watered fuel. We reverse and render.

## I.

Unitramp time chartered the M/V GLENITA, a general cargo vessel, and bought its fuel from Enjet Refining, Inc., a fuel broker insured by American. On June 9, 1993, Enjet supplied 450 metric tons of fuel to the M/V GLENITA in Corpus Christi Bay; the fuel was delivered from Enjet's Ingleside facility and loaded in segregated bunkers aboard the ship. At the time of loading, Unitramp sent a sample of the fuel for testing to Det Norske Veritas, a commercial laboratory.

The GLENITA left Corpus Christi later that day and arrived in Mobile, Alabama, on June 11, where it accepted a cargo of coal. Two days later, the ship departed for Casablanca. On June 14, the GLENITA was well at sea when it received word from the testing laboratory that Enjet's fuel contained excessive water. The vessel diverted to Tampa, Florida, exchanged fuel, and continued to Casablanca.

## II.

Unitramp sued Enjet to recover losses resulting from the delay. While the suit was pending, Enjet filed for bankruptcy, but the bankruptcy court lifted the automatic stay and permitted Unitramp to continue prosecuting its claim against Enjet. Unitramp and Enjet ultimately settled the dispute for $210,000.

American then sued Unitramp for a declaratory judgment that no coverage existed for the claim against Enjet because the Ingleside facility was not a scheduled location at the time the fuel was loaded. Unitramp counterclaimed for a declaratory judgment that American owed a duty to indemnify.

The instant dispute hinges on precisely when the mishap is deemed to have "oc-

curred." As of June 9—the day the watered fuel was loaded—American's policy did not extend coverage to liabilities arising from operations at the Ingleside facility. Effective as of noon on June 12, however—two days before Unitramp learned that the fuel did not meet specifications—the policy was renewed and the Ingleside facility added as a scheduled location. American argues that damage occurred on June 9 when the fuel was loaded aboard the GLENITA; Unitramp contends that because the harm did not become manifest until the laboratory had forwarded the test results, the date of occurrence is June 14.[1] The parties agree that interpretation of the policies is governed by Texas law.

### III.

This is the second time we have seen this case. Initially, the district court agreed with American that, for purposes of insurance coverage, the date of the occurrence was June 9—the day the bad fuel was loaded. On appeal, we vacated and remanded for a determination of when Unitramp "sustained actual damage." *See American Home Assurance Co. v. Unitramp Ltd.*, No. 96–20006, 91 F.3d 141 (5th Cir. June 20, 1996) (per curiam) (unpublished). On remand, the district court determined that Unitramp had sustained actual damage on June 9 and once again entered judgment for American. *See American Home Assurance Co. v. Unitramp Ltd.*, 945 F.Supp. 1061, 1067 (S.D.Tex.1996).

We review factual findings for clear error and conclusions of law *de novo*. *Williams v. Fab–Con, Inc.*, 990 F.2d 228, 230 (5th Cir.1993). An insurance policy is a contract subject to traditional rules of contract interpretation. *F.D.I.C. v. Firemen's Ins. Co.*, 109 F.3d 1084, 1087 (5th Cir.1997) (per curiam). We construe any ambiguities in an insurance contract strictly in favor of the insured. *Id.*

### IV.

Texas law provides that "[t]he time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed."[2] A party sustains actual damage when it sustains damage that is readily apparent. This is known as the "manifestation rule," and although it has not been expressly adopted by the Texas Supreme Court,[3] the state's lower courts have recognized and applied it.[4] As the court stated in *Cullen/Frost*, 852 S.W.2d at 257, "coverage is not afforded unless an *identifiable* damage or injury, other than merely causative negligence, takes place during the policy period" (emphasis added).

Our task is to determine at what point the damage to Unitramp became identifiable—in other words, when it manifested itself or became apparent. American contends that Unitramp could have discovered the watered nature of the fuel within three and one-half to four hours by hiring a local laboratory to test the sample. Unitramp

---

1. The original and renewed policy define "occurrence" as

   an event or a continuous or repeated exposure to conditions which unintentionally, from the standpoint of the Assureds, causes injury, loss, damages or destruction during the policy period. Any number of such injuries, damage or destruction resulting from a common cause or from exposure to substantially the same conditions shall be deemed to result from one occurrence.

   Both policies also provide that "[o]perations or products in existence prior to the inception of this policy which cause or result in bodily injury or property damage during the policy period are covered by this policy."

2. *Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 257 (Tex.App.—Dallas 1993, writ denied) (*citing Dorchester Dev. Corp. v.*

*Safeco Ins. Co.*, 737 S.W.2d 380, 383 (Tex.App.—Dallas 1987, no writ)). *See also Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 544 (5th Cir. 1992) ("Texas courts have concluded that the time of an occurrence is when a claimant sustains actual damage—not necessarily when the act or omission causing that damage is committed.").

3. *See American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 853 n. 20 (Tex.1994) (avoiding resolution, but noting that "Texas has limited precedent on this issue" and citing *Dorchester* as explaining the "pure manifestation" theory).

4. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905, 910 (Tex.App.—Austin 1997, writ denied) ("Texas courts have held that property loss occurs when the injury or damage is manifested").

**314**

concedes that it could have hired a local laboratory to perform the test, stipulating that "a full bunker test could have been performed by Enjet or Unitramp prior to the vessel's departure, and the test result received within ten hours." Based on this testimony, the district court found that "[w]ith minimal effort and cost, Unitramp could have discovered the watered fuel in time to discharge it to Enjet at its mooring."

■ We reject, at the outset, any suggestion that the *Cullen/Frost* court's use of the word "identifiable" means "capable of being known by testing." To interpret it as such would burden insureds with a unprecedented duty to conduct limitless tests and inspections for hidden defects. Rather, we read "identifiable" as synonymous with "manifest" and "apparent."[5]

"Apparent," like "manifest," means "capable of easy perception." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 102 (1986). Thus, in *Cullen/Frost,* the structural deterioration in condominium units was not apparent because it was hidden; the floor displacement and rotten woodwork were not readily observable by the senses. Accordingly, the problems did not become apparent until the owners conducted inspections. 852 S.W.2d at 258. But it is important to understand that "apparent" does not mean "discovered"; just because something is unknown to an individual does not render it, in an objective sense, unapparent. If the plaintiffs in *Cullen/Frost* had purchased a home that was missing a roof—but through sheer indolence failed to discover the defect for a year—we would not say that the defect became "apparent" on that later date.

In distinguishing between "apparent" and "discovered," we do not mean to imply that insured parties bear a heavy burden of inspecting their property for hidden defects. As explained above, we are not assigning an insured constructive knowledge of all defects that are capable of being uncovered through testing. Instead, we merely restate the rule that is itself apparent from Texas caselaw: The date of occurrence is when the damage

is capable of being easily perceived, recognized and understood.

It follows that Unitramp's damage was not apparent at the time the fuel was loaded. The watered nature of the fuel was not visible to the naked eye, but required offsite testing to uncover. While we respect the district court's factual finding that, by ordering an immediate test, Unitramp could have discovered the problem more promptly at "minimal effort and cost," we do not agree that the effort and cost were so minimal as to render the defect apparent or manifest.

While there may be instances in which a test or inspection imposes such an insignificant burden on an insured that the defect, though hidden, can be characterized as apparent, this is not such a case. Accordingly, we conclude that the damage was not manifest on the day the fuel was loaded on the GLENITA, and Unitramp sustained no damage until June 14, so the mishap was covered under the policy.

The judgment is REVERSED and RENDERED in favor of Unitramp.

---

**5.** *See, e.g., Dorchester,* 737 S.W.2d at 383 (time of occurrence is when "the property damage manifests itself, or becomes apparent"); *Cullen/Frost,*

852 S.W.2d at 258 ("the occurrence takes place when the property damage manifests itself").