**MATHEWS HEATING & AIR CONDITIONING LLC, Plaintiff,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 303CV2910–P.**

United States District Court, N.D. Texas, Dallas Division.

Oct. 21, 2004.

---

Stephen C. Rasch, Jason L. Cagle, Thompson & Knight, Dallas, TX, for Plaintiff.

Mark D. Tillman, Sedgwick Detert Moran & Arnold, Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court is Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment, filed August 19, 2004.[1] After careful consideration of the Parties' briefing, evidence, and applicable law, the Court denies Defendant's Motion for Summary Judgment.

## I. Background

Defendant Liberty Mutual Fire Insurance Company ("Liberty") issued a commercial general liability ("CGL") policy to Plaintiff Mathews Heating & Air Conditioning ("Mathews"). The policy coverage extended from February 1, 1999 to February 1, 2000. (Br. in Supp. of Def's. Mot. for Summ. J. at 1.) Mathews is in the air conditioning business. John and Margo Chestnut ("the Chestnuts") sued Mathews for breach of contract, fraudulent misrepresentations, and negligence[2] related to the design, installation and maintenance of an air conditioning system. Mathews tendered the Third, Fourth, Fifth, and Sixth Amended Petitions in the underlying suit to Liberty, its insurer. Liberty maintained that the claims were not covered under the policy, and denied coverage. As a result, Mathews obtained outside representation to defend them in the underlying suit. The underlying suit has settled. Subsequently, Mathews filed suit to recover damages for Liberty's failure to defend under the insurance policy. Mathews alleges breach of contract, violations of Tex. Ins.Code art. 21.21 and 21.55.

## II. Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett.*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and of identifying those portions of the record that demonstrate such an absence. *Id.* at 323, 106 S.Ct. 2548. When the moving party bears the burden of proof on a matter, "[it] must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986) (emphasis original). Summary judgment must be denied if a genuine issue of material fact remains in spite of the evidence traduced by the moving party.

The nonmoving party may but need not present evidence casting doubt on the sufficiency of the moving party's proof. All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). When the nonmovant fails to provide a response identifying the disputed issues of fact, however, the Court is entitled to accept the movant's description of the undisputed facts as prima facie evidence of its entitlement to judgment. *Eversley v. MBank Dallas*, 843 F.2d 172,

---

**1.** Plaintiff filed its response on September 8, 2004, and Defendant filed its reply on September 23, 2004.

**2.** The negligence cause of action was added in the Fifth Amended Petition.

173–174 (5th Cir.1999); *Nordar Holdings, Inc. v. Western Sec. (USA) Ltd.*, No. 3:96–CV–0427–H, 1996 WL 739019, *2 (N.D.Tex. Dec. 18, 1996). The Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998).

## III. Breach of Contract

### A. Legal Standard

 The Court follows Texas law when determining whether an insurance company has a duty to defend its insured. *See Essex Ins. Co. v. Redtail Prods., Inc.*, No. Civ. A. 3:97–CV–2120–D, 1998 WL 812394, at *1 (N.D.Tex. Nov. 12, 1998) (Fitzwater, J.). Under Texas law, the "complaint allegation rule," also known as the "eight corners rule," requires that an insurer's duty to defend be determined solely from the face of the plaintiff's complaint in the underlying action and the language of the insurance policy. *See id.; Gemmy Indus. Corp. v. Alliance Gen. Ins. Co.*, 190 F.Supp.2d 915, 918 (N.D.Tex. 1998); *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). The court compares the four corners of the insurance policy with the four corners of the plaintiff's pleading[3] to determine whether any claim alleged by the pleading is potentially within the policy coverage. *See Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998).

 Following this rule, "an insurer has a duty to defend its insured when any claim advanced by the plaintiff in the underlying litigation potentially states a cause of action within the coverage of the insurance policy, irrespective of the merits of the claim." *Essex*, 1998 WL 812394, at

*1; *see National Union*, 939 S.W.2d at 141. When reviewing the underlying pleadings, courts must focus on the factual allegations pled rather than on the legal theories alleged. *See Merchants*, 939 S.W.2d at 141. "Those allegations are to be considered 'without reference to the truth or falsity of such allegations.'" *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191 (Tex.2002). "Even if the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage." *Lafarge Corp. v. Hartford Casualty Ins. Co.*, 61 F.3d 389, 393 (5th Cir.1995).

 The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. *See VIC*, 143 F.3d at 193. Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion. *See id.*

 It is well established that insurance policies are to be strictly construed in favor of the insured in order to avoid exclusion of coverage. *American Guarantee and Liability Ins. Co. v. Shel–Ray Underwriters, Inc.*, 844 F.Supp. 325, 329 (S.D.Tex.1993) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984)). Likewise, courts resolve all doubts regarding a duty to defend in favor of the duty. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002).

### B. Did the pleading allege "property damage" or "bodily injury" during the policy period?

 The CGL policy in this case "applies to 'bodily injury'[4] and 'property

---

**3.** The court must examine the latest amended pleading upon which the insurer based its refusal to defend the action. *Harken Exploration Co. v. Sphere Drake Ins.*, 261 F.3d 466, 471 (5th Cir.2001). In the present case, that is the Sixth Amended Petition.

**4.** "Bodily injury" means "bodily injury, sickness or disease sustained by a person, includ-

damage'[5] only if (1) the 'bodily injury' or 'property damage' is caused by an 'occurrence'[6] that takes place in the 'coverage territory'; and (2) the 'bodily injury' or 'property damage' occurs during the policy period." (Def's.App. at 51.) Liberty makes a two part argument regarding the occurrence of damage or injury. First, it asserts that there is no damage or injury alleged to have occurred within the policy period, because under a "manifestation" trigger,[7] the manifestation of the injury or damage occurred after the expiration of the policy. Second, Liberty asserts that even if an "exposure" trigger[8] is used, the pleading did not assert that any exposure to mold during the policy period caused injury or damage. Thus, the Court must determine first whether the "exposure" or "manifestation" trigger applies, and then under that trigger, whether the pleadings alleged damage or injury[9] during the policy period.

### 1. When does damage occur?

The Fifth Circuit has ruled that property damage claims under liability insurance are subject to a manifestation trigger under Texas law. *Guaranty Nat. Ins. Co. v. Azrock Industries, Inc.*, 211 F.3d 239, 248 (5th Cir.2000); *American Home Assur. Co. v. Unitramp*, 146 F.3d 311, 313 (5th Cir.1998); *see Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 257 (Tex.App.-Dallas 1993, writ denied); *Dorchester Development Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 383 (Tex.App.-Dallas 1987, no writ). The *Azrock* court stated that it was constrained to follow Texas law in holding that property damage due to asbestos was subject to a manifestation trigger. *Azrock*, 211 F.3d at 248. The manifestation of damage is when "the condition becomes capable of being easily perceived or recognized." *Id.* at 247; *Unitramp*, 146 F.3d at 314. Mathews urges in its response that the Court nonetheless apply an exposure trigger based on the holding in *Pilgrim Enterprises, Inc. v. Maryland Casualty Co.*, 24 S.W.3d 488, 497–98 (Tex.App.—Houston [1st Dist.] 2000, no pet.), a case decided after the Fifth Circuit's decision in *Azrock*.

In *Pilgrim*, the Houston Court of Appeals, First District, decided what constituted an "occurrence" in a CGL policy

---

ing death resulting from any of these at any time." (Policy, Def's.App. at 68.).

**5.** "Property damage" means:

 a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or
 b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
(Policy, Def's.App. at 68.).

**6.** "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy, Def's.App. at 71.).

**7.** The "manifestation" trigger in the property damage context is when the condition be-

comes capable of being easily perceived or recognized. See Azrock, 211 F.3d at 247. In the case of personal injury the manifestation is "the date of diagnosis by a physician or the date a claimant experiences symptoms that impair his sense of well being." *Id.* at 245.

**8.** The "exposure" trigger "triggers coverage in any policy period in which exposure to cause of injury occurred." *American Physicians Ins. Exch. v. Garcia* 876 S.W.2d 842, 853 n. 20 (Tex.1994). Applying the exposure theory to asbestos, the Fifth Circuit in *Azrock* stated the "injury within the meaning of the policy is the subclinical tissue damage that results on inhalation of a toxic substance such as asbestos, even if symptoms or a diagnosable condition have not yet developed." *Azrock*, 211 F.3d at 245.

**9.** The Court does not address the bodily injury claims, or the appropriate trigger of liability for bodily injury claims. See fn. 11, infra.

where property damage was allegedly due to perchloroethylene ("PCE") ground contamination. Pilgrim Enterprises ("Pilgrim"), a dry cleaning business, had been covered by a CGL policy issued by Maryland Casualty ("Maryland") from 1981–1985. *Pilgrim,* 24 S.W.3d 488, 490. In 1994, years after the policy had expired, Pilgrim discovered the PCE contamination through soil testing and reported it to the TNRCC. *Id.* Surrounding property owners then sued Pilgrim for property damage due to exposure to PCE that was dumped before and during the policy period. *Id.* Pilgrim filed suit against Maryland seeking defense under the policy. *Id.* Maryland alleged that there was no "occurrence" because no property damage was manifest during the coverage period. *Id.* at 495.

The policy in that case covered property damage that resulted from an "occurrence," defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the insured." *Id.* at 494. The court concluded that under the occurrence definition, the exposure trigger was appropriate for both property damage and bodily injury caused by PCE. *Id.* at 497–98. The court distinguished decisions of other Texas courts of appeals adopting the manifestation trigger, based on the fact that those decisions did not consider the effect of the "continuous or repeated exposure to conditions" language in the CGL policy definition of "occurrence." *Id.* at 496. The court reasoned that such language

> contemplates that covered . . . damage can arise from accidents of "continuous or repeated exposure" to chemicals, and each policy defines . . . "property damage" as . . . "physical injury to or de-

struction of tangible property" occurring during the policy period. Thus, the policies contemplate that harm caused by continuous exposure during a policy period will be covered by that policy.

*Id.* at 497. The court went on to add, emphasizing the latter part of the "occurrence" definition, that the intent of the policy was to cover the contamination which occurred before the policy period but resulted in exposure causing property damage during the policy period as well. *Id.* at 499.

■■■ The Court is not persuaded, however that *Pilgrim* is closer to the facts of this case than the *Azrock* decision concerning property damage due to asbestos. The property damage in the case before the Court was allegedly due to the failure to properly design, install, and maintain an air conditioning system, causing mold damage.[10] *See* Pl. Resp. to Def's. Mot. For Summ. J. at 1. Mathews does not explain how mold contamination is like PCE contamination, thus warranting the use of the exposure theory to account for property damage over time. Further, as Liberty points out in its Reply, other district courts applying Texas law since *Pilgrim* was decided have similarly held that the manifestation trigger applies to the property damage claims due to mold. *See Flores v. Allstate Texas Lloyd's Co.,* 278 F.Supp.2d 810, 815–16 (S.D.Tex.2003); *Vesta Fire Ins. Corp. v. Nutmeg Ins. Co.,* 2003 WL 22508504, 2003 U.S. Dist. Lexis 25324 (W.D.Tex. Sept. 29, 2003). Accordingly, following *Azrock,* and in accordance with other district courts that have considered the issue, the Court holds that the manifestation trigger applies to property damage claims due to mold.

---

10. Mathews only seeks coverage regarding mold claims, and does not seek coverage due to the the allegations of failure to remediate asbestos. *See* Def's.App. at 76.

## 2. Pleadings

A review of the Sixth Amended Petition reveals that there is an allegation that "the mold had grown and spread through-out the house every year as a result of inadequate air conditioning." (Pl. App. at 174.) The air conditioning was initially installed in 1998 and serviced throughout 2000 and 2001. (Pl.App. at 172.) Defendants contend that there was no discovery of the condition during the policy period, because Mathews had "actively concealed" its conduct from the Chestnuts, and the inspection on the home was not completed until 2002, well after the policy period had expired. However, the manifestation test as under Texas law as interpreted by the Fifth Circuit requires only that the damage was "capable of being easily perceived." *Azrock*, 211 F.3d at 247; *Unitramp*, 146 F.3d at 314. The Fifth Circuit has explained that for purposes of the manifestation trigger, " 'apparent' does not mean 'discovered;' just because something is unknown to an individual does not render it, in an objective sense, unapparent." *Unitramp*, 146 F.3d at 314. Here, taking the allegations in the Chestnut's petition as true, as we must, *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 191 (Tex.2002), the allegation that there was mold damage to the house "every year" is a sufficient allegation that the mold damage was manifest, or capable of being easily perceived, during the policy period. The fact that the damage was "hidden" does not make it unapparent. This result is consistent with the reasoning in *Unitramp*, as holding otherwise would "burden insureds with a unprecedented duty to conduct limitless tests and inspections for hidden defects." *See Unitramp*, 146 F.3d at 314. Thus, the Court concludes that the Chestnut's alleged that property damage occurred during the policy period.

## C. Was the damage or injury caused by an "occurrence"?

Liberty asserts a second argument: even if there was damage during the policy period, it was not caused by an "occurrence," because it was not the result of an accident. Essentially, Liberty claims Mathews' alleged negligence in failing to perform adequate construction work is not an accident. "Accident" is not defined under the policy. Thus, we must give the term its plain, ordinary and generally accepted meaning. *Harken*, 261 F.3d at 472.

The Texas Supreme Court has not articulated a 'hard and fast' rule for when an accident occurs. *Id.; see Mid-Century Ins. Co. of Texas v. Lindsey*, 997 S.W.2d 153, 155 (Tex.1999). An accident has two elements: 1) an action and 2) that action's effect. *Harken*, 261 F.3d at 472. Intent and forseeability are factors affecting each element. *Id.* Acts constituting intentional torts do not constitute accidents. *Id.*, (citing *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973)). However, there is an accident when the action is intentionally taken, but is performed negligently, and the effect is not what would have been intended or expected had the action be performed non-negligently. *Id.* (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 ("accident includes the negligent acts of the insured causing damage which is undesigned and unexpected"); *Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400 (Tex.1967) (finding there was an accident when the action, the deliberate fumigation of a rice mill was performed negligently, and the effect was neither the intended nor the expected result had the fumigation been performed non-negligently); *Federated Mut. Ins. Co.*, 197 F.3d 720, 726 (5th Cir. 1999) (finding there was an accident when the action, the deliberate installation of

parking lot fill material was performed negligently, and the effect was neither the intended nor the expected result had the installation been performed non-negligently)).

Liberty argues that the fact that a claim for negligence was asserted is insufficient to constitute an occurrence, citing *Tealwood Construction, Inc. v. Scottsdale Ins. Co.*, 2003 WL 22790856, 2003 U.S. Dist. Lexis 20993 (N.D.Tex. Nov. 19, 2003). However, *Tealwood* is distinguishable from the present case. In that case, Tealwood Construction ("Tealwood"), the insured, had agreed to replace and repair siding, decking and paint. *Id.* at 2003 WL 22790856, *1, 2003 U.S. Dist. Lexis 20993, *3. Tealwood was sued for breach of contract and negligence, and sought coverage under its policy. *Id.* The court examined the pleadings and concluded that conclusory allegations of negligence did not overcome the basic facts underlying the claims-essentially re-casting a breach of contract-and thus there was no coverage. *Id.* at 2003 WL 22790856, *5, 2003 U.S. Dist. Lexis 20993, *17.

In the present case, there were numerous factual allegations in the negligence cause of action. For example, the petition alleges

> [Mathews] negligently failed to inspect or evaluate the duct system, negligently failed to adequately design and construct the return air cavity and air handler closets, and negligently failed to identify defects in the supply grill boot to sheet rock connections and negligently failed to recommend corrective measures.

(Pl.App. at 178–79.) These do not constitute 'conclusory allegations' but rather specific factual instances of Mathews' negligence in the course of performing the service work. *Tealwood* is further factually distinguishable, because the *Tealwood* plaintiffs in the underlying suit had alleged the damage was to the part of the property where the work was performed. *Tealwood*, 2003 WL 22790856 at *5–6, 2003 U.S. Dist. Lexis 20993 at *14—16. In the present case, the damage was to property *other than* that which the insured had contracted to work. Here, Mathews was to design, install and repair an air conditioning system, not the structure of the house where the mold infestation allegedly occurred. This is a significant factual distinction, as the property damage to the remainder of the house is not the intended result of the negligently performed air-conditioning service work. *See Jim Johnson Homes, Inc. v. Mid–Continent Cas. Co.*, 244 F.Supp.2d 706, 718–19 (N.D.Tex. 2003) (claims for damage to property that the insured had not contracted to work on alleged accidents covered under CGL policies).

Liberty also argues that the allegations constituting failure to comply with design or engineering specifications, as opposed to general allegations of negligent workmanship, are not accidental but intentional and produce foreseeable injury. *See Acceptance Ins. Co. v. Newport Classic Homes, Inc.*, 2001 WL 1478791, 2001 U.S. Dist. Lexis 18997 (N.D.Tex. Nov. 19, 2001). However, this assertion is inconsistent with the factual allegations made by the Chestnuts. There are allegations of negligent design by Mathews, not just failure to follow others' specifications. *See* Pl.App. at 178—79. The suit against Mathews alleged that Mathews negligently designed, installed, and maintained an air-conditioning system, resulting in mold infestation that caused property damage. (Pl.App. at 178–81.) Mold infestations are not an intended or expected result of an air-conditioning system that is properly designed, installed and maintained. Thus, the underlying pleadings alleged an accident under the definition of "occurrence."

Because the Court concludes that there were allegations of "property damage" caused by an "occurrence" during the policy period, there was coverage under the policy for the property damage claims.[11] Thus, the Court DENIES summary judgment on the breach of contract claim.

**IV. Article 21.21**

Because the Court has determined that there remains a fact issue as to the breach of the duty to defend, the Court now addresses the remaining claims. Liberty argues that under art. 21.21, a claim of breach of the duty to defend does not apply to third party claims. This same argument was raised and rejected before this Court in *Travelers Indemnity Co. of Connecticut v. Presbyterian Healthcare Resources*, 313 F.Supp.2d 648, 652 (N.D.Tex.2004). The Court declines to revisit that issue, and thus denies summary judgment on this basis.

■■■■■ Liberty next argues that "the evidence in the present matter shows, at best, a bona fide dispute about Liberty's duty to defend" the underlying suit, and therefore there cannot be bad faith as a matter of law. (Br. in Supp. of Def's. Mot. for Summ. J. at 13.) An insured claiming bad faith must prove that the insurer had no reasonable basis for denying or delaying payment of the claim, and that it knew or should have known that fact. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex.1994). Evidence showing merely a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith. *Id.* Mathews asserts that there was no reasonable basis for denial of claim, because "the exceptions and exclusions ... could have covered some, but not all, of the Chestnuts' claims." (Pl. Resp. at 14.) Mathews also asserts that the only exclusion that could

have covered all their claims was the asbestos exclusion, which did not cover claims exclusively for mold. *Id.* Lee Brading, Liberty's adjuster who sent the denial letters to Mathews, admitted at his deposition that the asbestos exclusion did not apply to claims for personal injuries caused solely by mold. *See* Pl.App. at 245—46. Liberty counters that the multiple limitations and exclusions for denial "in total apply to preclude coverage for all of the allegations asserted in [the] underlying lawsuit." (Def's. Reply at 9.) Further, Liberty asserts the bases were set out in the denial letters and Mathews "was on notice as early as July 30, 2002 that these policy provisions were a basis for Liberty's denial of any defense obligation." (Def's. Reply at 9). Aside from the asbestos exclusion, the policy provisions that Liberty both (1) relied on in its denial letter and (2) argue to the Court in its motion as basis for no coverage consist of the definitions of "occurrence," "injury," and "damage." *See* Pl.App. at 186–189. The Court has determined previously that the policy does not in fact exclude all coverage based on these definitions. *See* Part III, *supra.* Thus, the Court concludes that there is a fact issue as to whether Liberty had a reasonable basis to deny coverage for the mold claims, and denies summary judgment on this basis.

Liberty also contends that Mathews does not raise a claim for damages under art. 21.21. Liberty relies on the decision in *MacIntire v. Armed Forces Benefit Ass'n*, 27 S.W.3d 85, 92—93 (Tex.App.—San Antonio 2000, no pet.). In *MacIntire*, the insured failed to pay the premiums and thus was denied benefits under the policy. *Id.* at 87–88. The insured sued her insurer, and requested death benefits as dam-

11. Because the Court finds that there is coverage under the policy for the property dam-

age claim, the Court does not find it necessary to address the personal injury claim.

ages. *Id.* The court of appeals held there could consequently be no art. 21.21 claim, as no injury was shown beyond the injury that would always occur when an insured is not promptly paid [her] demand. *Id.*

Liberty also cites *Maryland Ins. Co. v. Head Industrial Coatings*, 938 S.W.2d 27, 29 (Tex.1996) for the proposition that there are no damages under art. 21.21 where no evidence of damages in excess of the policy benefits. In that case, the only evidence of damages under the policy was the judgment incurred against the insured as a result of the denial of coverage. *Id* at 231. The Texas Supreme Court allowed recovery up to the policy limits as well as defense costs.[12]

In the present case, Mathews is seeking attorney's fees and litigation costs. There is a fact question as to whether these damages were caused by the failure to defend under the policy. These damages are not the kind of injury that would always occur for a denial of benefits. In this context, denial of a defense is distinguishable from denial of pecuniary benefits under a policy. Where a party denied a defense will not necessarily obtain outside counsel (though obviously prudent to do so), a party denied pecuniary benefits will necessarily not have the amount of the benefit. Further, there is no prohibition of recovery of actual damages in art. 21.21 for conduct which is both a violation of the Texas Insurance Code and a breach of the duty to defend. *See* Tex. Ins.Code art. 21.21 sec. 16(a). Thus, the Court rejects Liberty's argument, and denies summary judgment on the art. 21.21 claim.

## V. Article 21.55

Finally, Liberty contends that art. 21.55 does not apply to Mathews' claim for a defense. This Court held that claims for a defense constitute a first party claim in its decision in *Travelers*, 313 F.Supp.2d at 652—53. Liberty asserts that the claim for a defense is not a first party claim, citing as persuasive authority *TIG Ins. Co. v. Dallas Basketball* 129 S.W.3d 232, 239 (Tex.App.—Dallas 2004). The Court has considered the statutory arguments as to the applicability of art. 21.55 in its previous opinion. *Travelers*, 313 F.Supp.2d at 652–53; *see also Housing Authority City of Dallas v. Northland Insurance Company*, 2004 WL 1877783 at *7 (N.D.Tex. Aug. 23, 2004) (Lindsay, J.) (following *Travelers*, holding claim for defense is first party claim under art. 21.55; discussion of split of authority and cases). Thus, the Court denies summary judgment on the art. 21.55 claim.

## VI. Conclusion

For the above reasons, the Court DENIES Defendant's Motion for Summary Judgment.

**It is so ordered.**

---

**12.** As noted in the Court of Appeals opinion in the same case, *Md. Ins. v. Head Indus. Coatings*, 906 S.W.2d 218, 232 (Tex.App.—Texarkana 1995), *overruled on other grounds*, 938 S.W.2d 27, 29 (Tex.1996), the defense costs were submitted and awarded based on the agreement of the parties. The Texas Supreme Court did not address this element of damages in its opinion.