COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-027-CV

 

 

ALLSTATE
INSURANCE COMPANY                                        APPELLANTS

AND ALLSTATE TEXAS LLOYD=S                                                           

 

                                                   V.

 

JOHN HUNTER AND WIFE,                                                     APPELLEES

CARMEN
HUNTER

                                              ------------

 

            FROM
THE 48TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

------------

I.  Introduction








The primary issue we address
in this appeal is whether the trial court correctly charged the jury on the
manifestation trigger of coverage theory applicable to a first-party claim
under a homeowner=s insurance
policy.  Because we hold that charge
error exists and because the evidence, measured against the requested correct
charge, is legally insufficient, we reverse the trial court=s judgment and render judgment that Appellees John and Carmen Hunter
take nothing.

II.  Factual and Procedural Background

In the summer of 2002, the
Hunters noticed a strange smell in their home. 
The Hunters= HO-B
homeowner=s insurance
policy with Appellants Allstate Insurance Company and Allstate Texas Lloyd=s expired on October 6, 2002, and the Hunters replaced it with an HO-A
homeowner=s policy
from Allstate, which was effective on October 7, 2002.  The strange smell persisted, and in December
2002, the Hunters hired a company to conduct air sample testing in their home;
the results revealed no elevated mold content in the air and offered no
explanation for the smell.  On February
4, 2003, a general contractor, Bill Hart, inspected the Hunters= home.  When Hart entered the
crawlspace under the home, he saw water damage and mold.  The Hunters both testified that this was the
first time that they knew of the mold damage or that the source of the odor
that they had been smelling was mold. 
Two days later, the Hunters notified Allstate of their claim.








Allstate adjuster Stella
Miller determined that the Hunters= claim should be treated as a claim under the HO-A policy and hired a
plumber to inspect the Hunters= home.  The plumber=s report showed an ongoing water leak at the Hunters= home.  Because the HO-A policy
covered only Asudden and
accidental@ plumbing
leaks, Allstate denied the Hunters= claim under the HO-A policy.[1]

The Hunters then requested
that Allstate treat their claim as one under their prior HO-B policy that had
expired on October 6, 2002.  Allstate did
so and denied coverage under the HO-B policy approximately eleven days
later.  The denial was based on the
Hunters= failure to comply with the condition of the HO-B policy requiring
prompt notice of the claim; Allstate reasoned that if the claim had occurred
under the prior HO-B policy that expired on October 6, 2002, then the Hunters= February 2003 notice of that claim was not timely.

The Hunters sued Allstate,
alleging that it had breached its contract of insurance, and a jury returned a
verdict for the Hunters.  The trial court
entered judgment on the jury=s verdict for the Hunters on the Hunters= breach of contract claim, attorney=s fees, and an eighteen percent penalty under the Prompt Payment
Act.  The trial court granted Allstate=s motion for judgment notwithstanding the verdict on the Hunters= extra-contractual claims.

 








Allstate perfected this
appeal, raising seven issues.  The
Hunters filed an Appellees= brief raising three cross-points contending that the trial court
erred by granting judgment notwithstanding the verdict.

III.  Charge Error

A.     Standard
of Review

The standard of review for
alleged jury charge error is abuse of discretion.  Shupe v. Lingafelter, 192 S.W.3d 577,
579 (Tex. 2006); Steak & Ale of Tex., Inc. v. Borneman, 62 S.W.3d
898, 904 (Tex. App.CFort Worth
2001, no pet.).  The trial court has
broad discretion in submitting jury questions so long as the questions
submitted fairly place the disputed issues before the jury.  TXI Transp. Co. v. Hughes, 224 S.W.3d
870, 900 (Tex. App.CFort Worth
2007, pet. filed); Toles v. Toles, 45 S.W.3d 252, 263 (Tex. App.CDallas 2001, pet. denied).  This
broad discretion is subject only to the limitation that controlling issues of
fact must be submitted to the jury.  Tex. R. Civ. P. 278; TXI Transp. Co.,
224 S.W.3d at 900.  A trial court abuses
its discretion by acting arbitrarily, unreasonably, or without consideration of
guiding principles.  See Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986); Borneman, 62 S.W.3d at 904.  That is, in preparing the charge, trial
courts have no discretion to misstate the law.  St. Joseph Hosp. v. Wolff, 94 S.W.3d 513,
525 (Tex. 2003).








In cases involving charge
error, an appellate court will reverse only if the error Awas reasonably calculated to and probably did cause the rendition of
an improper judgment.@  Bed, Bath & Beyond, Inc. v. Urista,
211 S.W.3d 753, 757 (Tex. 2006) (examining entire record to determine whether
error in submitting unavoidable accident instruction was harmful) (quoting Reinhart
v. Young, 906 S.W.2d 471, 473 (Tex. 1995)); accord Shupe, 192 S.W.3d
at 579 (examining harm from charge error in failing to submit a requested
instruction).  We examine the entire
record to evaluate whether the charge error probably caused the rendition of an
improper verdict.  Bed, Bath &
Beyond, Inc., 211 S.W.3d at 757.

B.     The Law Concerning the Manifestation Trigger of Coverage








The word Atrigger@ is used in
the insurance context as a term of art meaning the event that activates
coverage under one or more insurance policies. 
See Hoechst Celanese Corp. v. Certain Underwriters at Lloyd=s London, 673 A.2d 164, 166 n.2 (Del.
1996).  The trigger of coverage problem
arises in determining exactly what must take place within the policy=s effective dates to trigger coverage. 
Numerous trigger of coverage theories exist, including the manifestation
trigger, the exposure trigger, the continuous trigger, and the injury-in-fact
trigger.  Accord Guar. Nat=l Ins. Co. v. Azrock Indus. Inc., 211
F.3d 239, 243-27 (5th Cir. 2000) (explaining various triggers of coverage); APIE
v. Garcia, 876 S.W.2d 842, 853 n.20 (Tex. 1994) (recognizing the existence
of various trigger of coverage theories). 
No Texas state appellate court has discussed which of the trigger of
coverage theories should apply to a first-party claim under a standard homeowner=s insurance policy based on continuing or progressively deteriorating
damage to the insured=s
dwelling.  Accord State Farm Fire
& Cas. Co. v. Rodriguez, 88 S.W.3d 313, 322 (Tex. App.CSan Antonio 2002, pet. denied) (simply applying the manifestation
trigger theory to a homeowner=s claim for progressively deteriorating property damage to the insured=s dwelling without discussion of other trigger of coverage theories).

Several Texas appellate
courts have, however, addressed the appropriate trigger of coverage in the
context of a liability claim brought by a third party.  See Pine Oak Builders, Inc. v.
Great Am. Lloyds Ins. Co., No. 14-05-00487-CV, 2006 WL 1892669, at *6-8
(Tex. App.BHouston
[14th Dist.] July 6, 2006, no pet.); Cullen/Frost Bank of Dallas, N.A. v.
Commonwealth Lloyd=s Ins. Co., 852 S.W.2d 252, 257 (Tex. App.CDallas 1993), writ denied, 889 S.W.2d 266 (Tex. 1994) (per
curaim); Dorchester Dev. Corp. v. Safeco Ins. Co., 737 S.W.2d 380, 383
(Tex. App.CDallas 1987,
no writ).













In Pine Oak Builders,
the Houston Fourteenth Court of Appeals applied the exposure and continuous
trigger of coverage theories to third-party claims under a comprehensive
general liability (CGL) policy for continuing property damage based on
defective construction.  2006 WL 1892669,
at *6-8.  The appellate court in Cullen/Frost
in effect applied the continuous trigger of coverage theory to a bank=s commercial general liability insurance policy to determine the
insurer=s duty to defend the bank in a suit brought by a third party by
holding, AWe reject
the argument that there can be only one occurrence when the facts allege
continuous or repeated exposure causing continued or multiple property damages
over an extended period of time.@  852 S.W.2d at 257.  In Dorchester Development Corp., the
Dallas Court of Appeals applied the manifestation trigger of coverage theory to
a general contractor=s commercial
general liability insurance policy to determine the insurer=s duty to defend the general contractor in a suit brought by a third
party.  737 S.W.2d at 383.  And the Court of Appeals for the Fifth
Circuit, making an Erie guess based on Texas law, held that the exposure
trigger of coverage theory applied to trigger an insurer=s duty to defend under a commercial general liability policy against
third party claims for asbestosis.  Azrock
Indus., Inc., 211 F.3d at 246-47. 
Based on the contractual differences between first-party homeowner=s property insurance and third-party liability insurance, however,
commentators warn that the trigger of coverage theories for both types of
insurance should not necessarily be the same and also warn against
unintentionally superimposing trigger of coverage theories in one area onto the
other.  See Note, Triggering
Coverage of Progressive Property Loss: Preserving the Distinctions Between
First- and Third-Party Insurance Policies, 35 Wm. & Mary L. Rev. 1801, 1808 (1994); see also Azrock
Indus., Inc., 211 F.3d at 246-47 (distinguishing between trigger of
coverage theories for third-party personal injury claims and first-party
property claims).

Although no Texas state
appellate court has specifically discussed the distinctions among the various
trigger of coverage theories in the context of coverage under a standard,
first-party homeowner=s insurance
policy for a first-party claim based on continuing or progressively
deteriorating damage to the insured=s dwelling, two courts have applied the manifestation trigger to such
claims.  See State Farm Fire &
Cas. Co., 88 S.W.3d at 322; Flores v. Allstate Tex. Lloyds Co., 278
F. Supp. 2d 810, 815-16 (S.D. Tex. 2003).[2]








In State Farm Fire &
Casualty, the San Antonio Court of Appeals applied the manifestation
trigger of coverage theory to a claim by homeowners for progressive property
damage to their foundation allegedly caused by a plumbing leak.  88 S.W.3d at 317-18.  The court stated, ATexas courts have held that property loss occurs when the injury of
damages is manifested.@  Id. at 322 (quoting State Farm Mut.
Auto. Ins. Co. v. Kelly, 945 S.W.2d 905, 910 (Tex. App.CAustin 1997, writ denied)).[3]








In Flores, the United
States District Court for the Southern District of Texas applied the
manifestation trigger of coverage theory to a homeowner=s insurance policy in a suit by the homeowner against the insurer for
breach of contract, bad faith, and statutory violations based on the insurer=s failure to investigate and pay the homeowner=s claim for water damage and mold. 
278 F. Supp. 2d at 815-16.  The
court explained that the Floreses made a claim for mold damage, Anot the initial water events,@ and that Athe mold
claim did not arise until the mold damage became apparent@; that is, Athe date of
occurrence [for the Floreses= mold claim] is when the damage is capable of being easily perceived,
recognized, and understood.@  Id. at 816 (citing Am.
Home Assurance Co. v. Unitramp Ltd., 146 F.3d 311, 314 (5th Cir. 1998)).








Although the Flores case
involved a first-party property damage claim, the Flores court cited Unitramp,
which was a third-party liability claim. 
Unitramp involved a third party=s claim against a fuel broker for watered fuel sold to a third
party.  146 F.3d at 312-13.  The fuel broker=s insurer issued a new policy that became effective three days after
the fuel was loaded onto the third party=s tankerCthe policy
in effect when the fuel was loaded did not provide coverage, the new policy
did.  Id. at 313.  Hence, the issue was when the damage from the
purchase of the watered fuel became manifest or identifiable.  Id. at 313-14.  The third party learned of the watered fuel
five days after it was loaded when a laboratory forwarded test results to the
third party.  Id. at 312.  The court held that the damage occurred when
it was Areadily apparent@ and defined
apparent as Acapable of
easy perception.@  Id. at 313- 314.  Because the watered nature of the fuel was
not visible to the naked eye, the court held that the damage became apparent
when the third party received the laboratory test results.  Id. 
The court specifically declined to equate Aapparent@ with Acapable of being known by testing@ because A[t]o
interpret it as such would burden insureds with a unprecedented duty to conduct
limitless tests and inspections for hidden defects.@  Id. at 314.

The parties agree that the
manifestation trigger of coverage applies to the Hunters= homeowner=s insurance
policy with Allstate for coverage of progressive property damage to the Hunters= dwelling.[4]  Nonetheless, the terminology and language
used in the insurance contract itself is controlling.  Fiess v. State Farm Lloyds, 202 S.W.3d
744, 745 (Tex. 2006).  We have examined
the language of the contract at issue, the Hunters= HO-B policy with Allstate, and the language supports the parties= agreement that the manifestation trigger of coverage theory applies
to the Hunters= HO-B policy
concerning progressive property damage to the Hunters= dwelling.[5]








C.     The
Court=s Charge

Special question number one
asked the jury, ADo you find
from a preponderance of the evidence that on or before October 6, 2002 there
was rot, mold, or other fungi which was capable of being perceived, recognized
and understood?@  And the jury answered, AYes.@ 

Allstate=s counsel objected to this special question, stating,

On Question Number 1, Your Honor, we object that
there is no evidence to support the submission of this question to the
jury.  And we also have an objection to
the form of the question where it says, A. . . which was capable of
being perceived, recognized, and understood.@

The cases - - the case that I think that phrase
is taken from would be the  Flores
case and the Unitram [sic] case out of the federal courts. And they
insert the word, A. . .
capable of being easily perceived, recognized, and understood.@

And I can show that language to you, if you would
care to see it.

. . . .








And then I would also add in that at the end of
the phrase, our concern here is that the jury is not going to know as to who is
supposedly capable of receiving [sic], recognizing, and understanding this - -
this damage.  And so we would insert the
phrase at the end of the question, A. . . by a reasonably prudent
homeowner.@[6]

Those are our objections to Question Number 1.

(Emphasis added).  

D.     Application
of the Law to the Present Facts








In its first issue, Allstate
contends that the trial court erred by submitting the manifestation trigger of
coverage theory question without inserting the word Aeasily@ before the
phrase Aperceived, recognized, and understood.@  Allstate complains that the
trial court compounded this error by also overruling Allstate=s objection to the omission of the phrase Aby a reasonably prudent homeowner@ from the conclusion question one. 
Consequently, Allstate argues that special question number one actually
submitted the exact manifestation theory specifically rejected by the Unitramp
court; that is, a manifestation question that permitted a finding of
manifestation based only on a determination that the rot, mold, or other fungi
in the Hunters= home was Acapable of being perceived,
recognized, or understood@ by some
unidentified person.  This, Allstate
contends, imposes the exact burden on homeowners that was disavowed by the Unitramp
court, Athe unprecedented duty to conduct limitless tests and inspections for
hidden defects.@  Unitramp, 146 F.3d at 314.

Allstate further points out
that the manifestation theory submitted by the trial court is unworkable
because it means that mold manifests for purposes of triggering coverage under
a homeowner=s policy when
it is theoretically Acapable@ of perception through some type of exotic testing that was not
actually performed.  Under such a theory
of manifestation, the homeowner could not possibly comply with the policy=s notice provision because a homeowner cannot provide notice of a mold
claim to an insurer until the homeowner possesses actual knowledge of
the mold, i.e., not at some earlier date when the mold could have been
perceived through testing or by someone crawling in the crawl space.  See Flores, 278 F. Supp. 2d at 816
(discussing the manifestation trigger of coverage theory and noting that an Ainsured cannot provide notice until he is aware of facts relating to a
claim@).








Finally, Allstate points out
that the Hunters utilized two different theories or dates of manifestation at
trial.  They obtained an affirmative
answer to question number one by proving that the rot, mold, or fungi in their
dwelling was theoretically capable of being perceived, recognized, and
understood by some unidentifiable person on or before October 6, 2002.  But then, in order to obtain a jury finding
in their favor on the question of whether they provided timely notice to
Allstate, the Hunters proved that they provided notice two days after they
actually learned of the moldCnot after the mold was capable of being perceivedCwhich was more than four months after the HO-B policy expired.  Thus, Allstate argues that the Hunters
claimed the mold was Amanifest@ for purposes of triggering coverage when it was theoretically capable
of being perceived by some unidentified person, but it was not Amanifest@ for
purposes of triggering their duty to give notice to Allstate until it was
actually discovered. 

We agree with Allstate that
the manifestation question propounded to the jury in special question number
one should have contained the word Aeasily@ prior to
the phrase Acapable of
being perceived, recognized, and understood@   See Unitramp, 146 F.3d
at 314 (defining the manifestation trigger of coverage theory as being Awhen the damage is capable of being easily perceived, recognized and
understood@); see
also Flores, 278 F. Supp. 2d at 816 (quoting the foregoing language from Unitramp).  We also agree with Allstate that the Hunters
cannot utilize two different manifestation theories or dates, one to trigger
coverage under the HO-B policyCwhen the rot, mold, or fungi was theoretically capable of perceptionCand one to determine when the Hunters= duty to give notice aroseCwhen the Hunters actually learned of the mold.  See Flores, 278 F. Supp. 2d at 816.








Accordingly, we sustain
Allstate=s first issue.

 

 

IV.  Legal Sufficiency of the Evidence

A.     Standard of Review

When the trial court submits
an erroneous question over a proper objection, we measure the legal sufficiency
of the evidence supporting the jury=s finding against the proper, requested submission.  See St. Joseph Hosp., 94 S.W.3d at 530
(distinguishing Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000), which
held that, absent an objection, the appellate court is to measure sufficiency
against the charge actually submitted). 
Consequently, here, we review the evidence against the question that
should have been submitted, ADo you find from a preponderance of the evidence that on or before
October 6, 2002 there was rot, mold, or other fungi which was capable of being easily
perceived, recognized and understood?@








A legal sufficiency challenge may only be sustained when
(1) the record discloses a complete absence of evidence of a vital fact, (2)
the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the evidence offered to prove
a vital fact is no more than a mere scintilla, or (4) the evidence establishes
conclusively the opposite of a vital fact. 
Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex.
1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable fact-finder could, and disregard evidence contrary to the finding
unless a reasonable fact-finder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 827
(Tex. 2005).

B.     No
Evidence of Manifestation Prior to October 6, 2002








Stella Miller, Allstate=s adjuster on the Hunters= claim, testified that the Hunters filed a claim, she received it on
February 7, 2003, and she contacted Mr. Hunter. 
She explained that the Hunters= policy (the HO-A policy) covered damage arising only from sudden and
accidental discharge from the plumbing system. 
She explained that mold in and of itself was not covered.  Because Mr. Hunter was unsure whether his
dwelling had experienced any plumbing leaks, she provided him with a plumber
who could determine that.  The plumber=s report indicated that the leak was Aongoing@ but could
not pinpoint a date on which the leak began. 
Miller testified that the Hunters= claim was not covered under the HO-A policy because it was not due to
a sudden and accidental discharge, and it was not covered under the Hunters= prior HO-B policy because their notice was not timely under that
policy.

Miller was cross-examined
concerning Allstate=s AMold Reference Manual,@ which indicates that two mold triggers exist; one is a report of
visible mold at the home by the occupants or by a vendor at the scene, and the
other is a report of mold odors from the home=s occupants or from a vendor at the scene.  All parties agree that the Hunters, in
discussing their February 6, 2003 claim with Allstate, told Allstate for the
first time that their home had smelled musty since the previous summer or
earlier.  

John Hunter testified that he
had smelled a musty odor in his home in August 2002.  Approximately four months later, in December
2002, he hired a company to come to his home and conduct mold testing.  The testing showed no elevated level of mold
in the Hunters= home.  The Hunters thenCin February 2003Chired Bill
Hart to inspect their home, and he found water damage and mold in the
crawlspace under the home.  Mr. Hunter
testified that he went into the crawlspace under the home one time between 1994
and 2004, right before his first child was born, and it was dry.[7]








On cross-examination, Mr.
Hunter testified that before he purchased the home in 1994, a man named Crum
inspected the home.  That inspection
showed water standing on the west side of the house near the foundation and
under the crawlspace.  The inspection
indicated that the water may have been entering the crawlspace via a leaking
outside hose that was on. 

Carmen Hunter testified that
she began smelling a musty odor in the spring of 2002.  She searched for the source of the odor; she
never called Allstate.  They hired people
to inspect their home; they didn=t call Allstate.  Then, after
Bill Hart found mold in their home on February 4, 2003, they called
Allstate.  

Several experts testified
about the damage to the Hunters= home and the extensive repairs needed based on the mold and wood rot.








The evidence does establish
that the damage to the Hunters= home may have occurred prior to October 6, 2002.  But, using the proper case law definition of Amanifest@Cthat is, when the damage was capable of being easily perceived,
recognized and understoodCthere is no
evidence that the damage manifested prior to that date.  See Flores, 278 F. Supp. 2d at 816
(utilizing this definition of manifest). 
In fact, the evidence establishes that despite searches by Mrs. Hunter
and air-testing by experts, the damage to the Hunters= home did not Amanifest@ until February 4, 2003, when Bill Hart found it in the crawlspace
under the Hunters= home.

The Hunters argue that a
damage manifests when it is capable of being perceived by one=s senses and that, consequently, the mold manifested prior to October
6, 2003, because the Hunters smelled it prior to that date.  The problem with this argument is that if the
damage manifested itself on the date that the Hunters smelled it, then that is
date on which the Hunters= duty to
notify Allstate of this claim was triggered. 
See Flores, 278 F. Supp. 2d at 816-17 (explaining that a Aparty cannot be said to sustain actual property damage until such
damage becomes manifest@ and that
notice is required when the damage manifests). 
The Hunters did not notify Allstate of the mold smell until February 6,
2003.








The Hunters also argued at
trial that Allstate=s Mold
Reference Manual listed a reporting of a mold smell by the homeowner as a Amold trigger@ providing
coverage under their HO-B policy because they smelled the odor during the HO-B
policy period.  If the Hunters had filed
a claim with Allstate in the spring of 2002 when they smelled what turned out
to be mold, there is no question that their HO-B policy with Allstate would
have covered the claim.[8]  The evidence establishes, however, that the
Hunters did not contact Allstate when they smelled the odor in their home.  Consequently, the Amold trigger@ referenced
in Allstate=s Mold
Reference Manual did not happen; that is, neither the homeowner nor a vendor
reported to Allstate during the policy period of the HO-B policy that mold or
any odor was present at the Hunters= home.  We have found no support
for the Hunters= argument
that their action of telling Allstate in February 2003 that they had been
smelling an odor for ten months triggered coverage in the absence of the filing
of a claim with Allstate or of notifying Allstate during that ten-month period.

Considering the evidence favorable to the jury=s finding in
response to a proper submission of question oneCwhether there was rot, mold, or other fungi in the Hunters= dwelling on or before October 6, 2002, which was capable of being
easily perceived, recognized, and understoodCthere is a
complete absence of evidence supporting the jury=s Ayes@ answer.  See Uniroyal Goodrich Tire Co., 977
S.W.2d at 334.  Accordingly, we sustain
Allstate=s third issue. 

V.  The Hunters= Cross-Issues








The Hunters raise two
cross-issues in their brief, complaining of the judgment notwithstanding the
verdict entered by the trial court on their extracontractual claims; the
Hunters seek judgment on the jury=s verdict on these claims. 
Extracontractual damages are not recoverable by the Hunters in light of
our disposition of Allstate=s third issue concerning the Hunters= breach of contract claimCthat no evidence exists that the damage to the Hunters= home manifested during the HO-B policy periodCand in light of the Hunters= concession that no coverage exists under the HO-A policy.  See Republic Ins. Co. v. Stoker, 903
S.W.2d 338, 341 (Tex. 1995); Perrotta v. Farmers Ins. Exch., 47 S.W.3d
569, 575 (Tex. App.CHouston [1st
Dist.] 2001, no pet.); Trivoli Corp. v. Jewelers Mut. Ins. Co., 932
S.W.2d 704, 712 (Tex. App.CSan Antonio 1996, writ denied). 
Accordingly, we overrule the Hunters= cross-issues.

VI.
Conclusion








Having sustained Allstate=s first and third issues and overruled the Hunters= cross-issues, we reverse the trial court=s judgment; and because no evidence exists that the Hunters= property damage manifested during the HO-B policy period, we render
judgment that the Hunters take nothing on their claims under that policy.  Because the remainder of the Hunters= claims are predicated on a finding that their February 6, 2003 claim
was covered under the HO-B policy, we reverse the trial court=s judgment on the Hunters= other claims and render judgment that the Hunters take nothing.   

 

SUE WALKER

JUSTICE    

                                                                                                        

PANEL B:   LIVINGSTON, WALKER and MCCOY, JJ.

 

DELIVERED:
November 21, 2007











[1]The
Hunters did not contend at trial and do not contend on appeal that their mold
claim was covered under their HO-A policy. 
John Hunter testified at trial, A I - - I agree that it=s not
covered under the HO-A policy.@ 





[2]Other
states have likewise applied the manifestation trigger of coverage theory in
first-party progressive property loss situations.  See, e.g., Prudential-LMI
Commercial Ins. v. Superior Court, 798 P.2d 1230, 1246 (Cal. 1990); Jackson
v. State Farm Fire & Cas. Co., 835 P.2d 786, 789 (Nev. 1992);
Winding Hills Condo. Ass=n, Inc. v. N. Am. Specialty
Ins. Co., 752 A.2d 837, 840 (N.J. Super. Ct. App. Div.
2000); Ellis Court Apartments Ltd. P=ship
v. State Farm Fire & Cas. Co., 72 P.3d 1086, 1089 (Wash.
Ct. App. 2003); see also Gregory A. Goodman, Insurance Triggers as
Judicial Gatekeepers in Toxic Mold Litigation, 57 Vand. L. Rev. 241 (2004) (urging the adoption of the
manifestation trigger of coverage theory in all types of mold litigation). 





[3]In Kelly,
the Austin Court of Appeals held that an automobile insurance policy covered an
Aaccidental
loss@
incurred by the policy holder when the insured=s
automobile was confiscated because it had been stolen earlier in the chain of
title.  The insurer argued that the loss
occurred when the vehicle was sold with defective title, not when the vehicle
was confiscated.  Id.  The court 
disagreed and held that the loss occurred when the injury or damage was
manifested, i.e., when the vehicle was confiscated.  Id. 






[4]The
Hunters=
brief on appeal states, AAppellee
has no objection to the application of the manifestation rule to this case.@  Nonetheless, because the proper trigger of
coverage theory to be applied is a question of law that we review de novo, we
have discussed it and conclude independently of the parties=
agreement that it applies here.  





[5]We
note that although the policy defines Aoccurrence@ as Aan
accident, including exposure to conditions, which result[s] in bodily injury or
property damage during the policy period,@Cthis definition is commonly
associated with an exposure trigger of coverage theoryCthe term
Aoccurrence@ is
not used in connection with the ASection I@
dwelling coverage.  See Pine
Oak Builders, Inc., 2006 WL 1892669, at *6-8 (utilizing the definition of Aoccurrence@ as
including continuous or repeated exposure to apply the exposure trigger of
coverage).  The pertinent provision of
the Hunters= HO-B
policy that addresses when Section I coverage for damage to the Hunters=
dwelling is triggered provides, AThis policy applies only to
loss in Section I or bodily injury or property damage in Section II which
occurs during the policy period stated on the declarations page.@  See also Azrock Indus. Inc., 211 F.3d
at 251-52 (applying the exposure trigger of coverage theory to a CGL policy=s
liability insuranceCwhich
utilized the Aoccurrence@
definition at issue hereCbut
applying the manifestation trigger of coverage theory to a property damage
claim under the same policy).   





[6]Because,
as discussed below, we sustain Allstate=s first issue contending that
the omission of the word Aeasily@ from
special question one over Allstate=s objection constituted error
and also sustain Allstate=s
legal sufficiency challenge, we need not address the omission of the phrase Aby a
reasonably prudent homeowner@ from special question
one.  See Tex. R. App. P. 47.1 (requiring appellate court to address
only issues necessary to disposition of appeal).





[7]The
date of the birth of the Hunters= first child is not in the record,
but their second child, Benjamin, was born in 2000. 





[8]We
note that, under the state of the law in the spring of 2002, mold caused by
plumbing leaks constituted covered property damage under HO-B policies; that
coverage has subsequently been called into question.  See Fiess, 202 S.W.3d at
745.  But see Balandran v. Safeco Ins.
Co. of Am., 972 S.W.2d 738, 741 (Tex. 1998).